UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| RONALD MCALLISTER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:16-CV-172 SNLJ |
| | ) | No. 4:16-CV-262 |
| | ) | No. 4:16-CV-297 |
| THE ST. LOUIS RAMS, LLC, | ) | No. 4:16-CV-189 |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This matter consists of four consolidated cases all pertaining to the St. Louis Rams football team's move from Missouri to California in 2016. This matter is before the Court on plaintiff James Pudlowski's motion to reconsider the Court's order denying plaintiff's motion to remand (#48) and Pudlowski's subsequent affidavit in support of his arguments in favor of remand (#127). Defendant has responded to the affidavit, and plaintiff has replied. The matter is now ripe for disposition.

**I.   Background**

Plaintiff filed his first complaint in state court , and the defendants removed the case to this Court citing diversity jurisdiction generally[1] and, in the alternative, "minimal diversity" under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), (d)(5) ("CAFA"). Plaintiff filed a First Amended Complaint ("FAC") and with it a motion to remand to state court. The FAC attempted to clarify that the class was comprised only of Missouri citizens, rendering any "minimal diversity" arguments inaccurate for CAFA purposes. Plaintiff also argued that even if CAFA jurisdiction were present, then the "local

---
[1] It appears that the parties agree that standard diversity jurisdiction, 28 U.S.C. § 1332(a), is not present here.

1

controversy exception" applied to require remand because more than two-thirds of the plaintiff class are Missouri citizens. *See* 28 U.S.C. § 1332(d)(4)(A).

The defendants responded that the original petition created minimal diversity because the class definition used the term "Missouri resident," leaving open the possibility that a non-Missouri citizen who was also a Missouri resident could be a member of the class and thus provide diversity of citizenship. The defendants argued that the Court should not consider the FAC, which revised the class definition to include only Missouri citizens who were Missouri citizens at the time of the petition's filing.

Plaintiffs replied and pointed out that defendants had not met their burden of proof to establish CAFA jurisdiction because defendants had not identified any person who created minimal diversity. Defendants sought and received permission to file a Sur-Reply with attached affidavits from Missouri residents who were not Missouri citizens. This Court did not consider the affidavits and remanded the matter to state court, but the Eighth Circuit subsequently (and without ruling on any substantive matter) instructed this Court to consider the affidavits before reaching a ruling on the remand issue (#55).

On remand from the Eighth Circuit, the plaintiffs filed a Sur-Response urging the Court to consider its FAC definition of the class and citing Ninth Circuit law. Defendants responded to the Sur-Response. This Court denied the motion to remand and held that the FAC could not be considered and that minimal diversity exists.

Plaintiffs requested reconsideration of the Court's order because, they say, the Court did not consider the "local controversy exception" or the "home state exception" to CAFA jurisdiction. Defendants respond that plaintiffs abandoned those arguments because they have not been raised since the plaintiffs' very first brief on the motion to remand. Plaintiffs responds that plaintiff did not abandon those arguments; rather, those

arguments were only relevant if the Court found "minimal diversity" under CAFA, which plaintiff disputed from the beginning. Plaintiffs further notes that because it was defendants' burden to establish CAFA jurisdiction, the burden was not on plaintiffs to prove the exceptions were effective unless defendants met their burden.

The Court's Memorandum and Order held that defendants had established each of the three CAFA jurisdictional elements: (1) minimal diversity among the parties (that is, any class member and any defendant are citizens of different states); (2) at least 100 class members; and (3) an amount in controversy of more than $5 million. 28 U.S.C. § 1332(d)(2), (d)(5); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). The Court also held that the class definition in the first petition, not the FAC, applied because the pre-removal complaint is the relevant document for determining whether removal was appropriate. (#64 at 5.) Plaintiff points out that the original petition explicitly stated that there is "no diversity of citizenship" among the parties, but the Court did not address that matter, instead focusing on the clear language of the class definition, which refers only to "Missouri residents."

Plaintiffs argued that, in light of the Court's conclusion that the CAFA jurisdictional elements had been established, the Court should have applied the local controversy exception to the facts of the case. Under the local controversy exception, a district court must decline to exercise jurisdiction over a class action (1) in which more than two-thirds of the class members in the aggregate are citizens of the state in which the action was originally filed, (2) at least one significant defendant is a citizen of the state in which the class action was originally filed, (3) the principal injuries were incurred in the state in which the action was filed, and (4) no other class action alleging similar facts was

3

filed in the three years prior to the commencement of the current class action. 28 U.S.C. § 1332(d)(4)(A); *Westerfeld*, 621 F.3d at 822.

As this Court recognized, there appears to be no doubt that the second, third, and fourth factors for the local controversy exception are met here. The parties' dispute pertains to the first factor, whether more than two-thirds of the class members are Missouri citizens. This Court allowed plaintiff jurisdictional discovery regarding state citizenship. *See Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 266 (8th Cir. 2015) (describing discovery process but holding that "last-known address" evidence was not persuasive ). The Eighth Circuit approves of the Seventh Circuit's approach to this sort of analysis, in which

> plaintiffs may "take a random sample of potential class members, ascertain the citizenship of each on the date the case was removed, and extrapolate to the class as a whole. If the sample yields a lopsided result, the outcome is clear without the need for more evidence. If the result is close to the statutory two-thirds line, then do more sampling and hire a statistician to ensure that the larger sample produces a reliable result."

*Id.* (quoting *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 665 (7th Cir. 2014) (internal changes adopted)).

Plaintiff conducted discovery and retained an expert to submit an expert report regarding the citizenship of the proposed class. (#127.) Defendant hired its own expert, who submitted his own expert report and criticized the plaintiffs' expert's methodology. For the following reasons, the Court finds that the local controversy exception applies to this case to defeat the Court's CAFA jurisdiction. The matter will be remanded, and the defendants' motion to dismiss will be denied as moot.

## II. Discussion

Plaintiffs, as the party invoking the local controversy exception, have the burden to prove the exception by a preponderance of the evidence. *Hood*, 785 F.3d at 265. Plaintiffs retained Dr. Charles Cowan as their expert in statistics and survey design and implementation. He took a random sample of potential class members and ascertained their citizenship --- or domicile ---that is, where the person (1) resides, and (2) intends to remain. *Myrick*, 764 F.3d at 664. His survey asked putative class members whether they made a relevant purchase from defendants during the class period, whether they resided in Missouri when they made their purchase and continued to reside in Missouri through the time the case was filed, and whether they intended to continue to live in Missouri. He received 107 responses and determined 93 were Missouri citizens. Thus 86.7% of putative class members had Missouri citizenship. Dr. Cowan also determined this was a random and statistically significant sample.

Defendants do not take issue with Dr. Cowan's credentials. They do, however, submit an expert report from Dr. Stephen Cacciola that disputes much of Dr. Cowan's conclusion, but without offering a competing calculation of Missouri citizens versus Missouri residents. Dr. Cowan later responded and refuted the defendants' criticisms.

The Court will not go into the details of the parties' statistical debates. Although defendants go to great lengths to discredit Dr. Cowan's survey, the Court finds Dr. Cowan's analysis and opinion persuasive, even in the face of defendants' arguments to the contrary. Defendants' criticisms fall into three general categories, discussed briefly below:

First, defendants argue that Dr. Cowan did not obtain a representative sample of proposed class members. Dr. Cowan responds that the nature of his sampling frame was

accounted for in his results to ensure accuracy based on his experience, education, and training and in accordance with standards in his field. With respect to defendants' argument that Dr. Cowan's data did not include tickets sold at the ticket window on game days, Cowan concluded that, as with other factors, there was no statistical basis to differentiate the citizenship rate of Missouri residents who purchased online versus those who purchased at the ticket window.

Second, defendants point out that Dr. Cowan's survey asked about Missouri citizenship as of the date of the filing of the case (January 13, 2016) rather than its date of removal (February 11, 2016). Although Dr. Cowan opines that statistically, the 29-day difference has no relevance or impact on his student, Dr. Cowan applied the February date to his survey and found that the rate of Missouri citizenship actually went up to 89.9%.

Third, defendants argue that Dr. Cowan cannot reliably extrapolate from the survey results to the proposed class. Plaintiffs respond that Dr. Cowan used standard procedures within his profession and that the correction of the few errors defendants found resulted in a drop in the Missouri citizenship rate from 86% to 85%.

Ultimately, even accepting defendants' criticisms, Dr. Cowan's opinion results in finding a Missouri citizenship rate significantly larger than two-thirds at a 95% confidence level. Defendants do not suggest that Dr. Cowan is not qualified as an expert in these matters, nor is there any apparent basis for defendants to do so. Dr. Cowan's opinion easily supports that more than two-thirds of plaintiffs' class comprises Missouri citizens. Plaintiffs' burden of proof is by a "preponderance" --- or more than 50% --- of the evidence. The Court finds that plaintiffs' approach was disciplined and reliable so as to meet this burden.

Accordingly,

**IT IS HEREBY ORDERED** that this matter shall be REMANDED to the Circuit Court for the City of St. Louis, Missouri.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss (#49) is DENIED as moot.

Dated this  12th  day of February, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE